**The REPUBLIC OF THE PHILIPPINES and National Power Corporation, Plaintiffs,**

v.

**WESTINGHOUSE ELECTRIC CORPORATION, Westinghouse International Projects Company and Burns and Roe Enterprises, Inc., Defendants.**

**Civ. No. 88–5150.**

United States District Court, D. New Jersey.

Oct. 18, 1991.

---

Philip Elberg, Medvin & Elberg, Newark, N.J. and Michael E. Tankersley, Alan B. Morrison, Public Citizen Litigation Group, and Priscilla Budeiri, Arthur H. Bryant, Trial Lawyers for Public Justice, P.C., Washington, D.C., for Public Citizen, Inc., Essential Information, Inc., and Dr. Jorge Emmanuel.

Alan S. Naar, Greenbaum, Rowe, Smith, Ravin & Davis, Woodbridge, N.J. and Mark Augenblick, Shaw, Pittman, Potts & Trowbridge, Washington, D.C., for the Republic of the Philippines.

Raymond M. Tierney, Jr., William D. Sanders, Shanley & Fisher, Morristown, N.J. and David Boies, Richard W. Clary, Cravath, Swaine & Moore, New York City and Jonathan D. Schiller, Donovan Leisure, Rogovin, Huge & Schiller, Washington, D.C., for Westinghouse Elec. Corp. and Westinghouse Intern. Projects Co.

## OPINION

DEBEVOISE, District Judge.

Before the Court is the motion of Public Citizen, Inc. ("Public Citizen"), Essential Information, Inc. ("Essential Information"), and Dr. Jorge Emmanuel ("Emmanuel") (collectively, "the Intervenors"), to intervene, to modify the protective order regarding future pleadings and to unseal court records in the action brought by the Republic of the Philippines ("the Republic") and the National Power Corporation ("NPC") against Westinghouse Electric Corporation, a Pennsylvania corporation, Westinghouse International Projects Company (collectively, "Westinghouse") and Burns & Roe Enterprises, Inc. ("Burns & Roe"), a New Jersey corporation.[1] For the reasons outlined below, I rule as follows: (i) the Clerk of the Court shall unseal all materials filed in support of or in opposition to the summary judgment motion, which was the subject of a hearing of May 28, 1991 and an Opinion of September 20, 1991, 774 F.Supp. 1438, except for materials relating to grand jury proceedings; (ii) the parties submitting briefs and memoranda in support of or in opposition to the summary judgment motion shall provide such briefs and memoranda in accordance with the local rules of this Court; (iii) the Intervenors may move before the Magistrate Judge for the unsealing of any documents not unsealed under this ruling; (iv) as to future filings with the Court, nothing will be filed under seal unless application is made to the Magistrate Judge with notice to be provided to the Intervenors and he, applying applicable principles of law, issues a sealing order; (v) also as to future filings with the Court, the plaintiffs and defendants will not file documents previously designated as confidential and not unsealed pursuant to this ruling without giving 20 days written notice to the opposing party, which then may apply, on notice to the Intervenors, for continuation of the confidentiality designation; (vi) to the extent that any provisions of the Second Amended Protective Order are inconsistent with this ruling they are hereby deemed to be modified; and (vii) this ruling shall take effect 7 days after the date of the Order accompanying this Opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

There are two critical opinions in the underlying action between the Republic and NPC on the one hand, and Westing-

---

1. Burns & Roe has filed no papers in connection with this motion to intervene, modify and unseal. The Republic of the Philippines has no objection to relief requested. Plaintiff's Response to the Motion of Public Citizen, et. al, to Intervene, Modify Protective Order and Unseal Court Documents, October 15, 1991.

house and Burns & Roe on the other, arising out of the construction of the 600 megawatt Philippines Nuclear Power Plant Unit 1 ("PNPP") in Bagac, Bataan, the Republic of the Philippines. On May 18, 1989 I stayed, pending arbitration pursuant to Article 24 of the PNPP prime contract, all counts against Westinghouse, with the exception of Count 3 alleging tortious interference with fiduciary duty, and that part of Count 8 setting forth a claim of conspiracy to interfere with fiduciary duties. I also stayed Count 2 against Burns & Roe pending arbitration in accordance with its contract with the NPC and all other counts against Burns & Roe, with the exception of Count 3 and Count 8 to the extent it sets forth the conspiracy claim. On September 20, 1991, I denied the summary judgment motion of Westinghouse and Burns & Roe regarding Count 3 and that portion Count 8 I had allowed to go forward. A trial on these matters is scheduled for February 6, 1992.[2]

At the May 28, 1991 hearing on the defendants' summary judgment motion, which was not sealed and the transcript of which is part of the public record,[3] I considered the questions whether a bribe was made to secure the turnkey contract for Westinghouse and the consulting contract for Burns & Roe, and whether any bribe influenced former Philippine dictator Ferdinand E. Marcos. In the course of that argument, the parties and I referred to evidence that I found could support a finding that the defendants bribed Marcos, including evidence in the sealed record filed in connection with the summary judgment motion where Westinghouse officials refer to the need to find a "front man for Marcos" and discuss hiring a "bag man" to assist in the procurement of the contract. Transcript of Proceedings, May 28, 1991, at 14:1–6, 28.

I also discussed at length the evidence submitted in connection with the motion supporting the allegations of bribery in my September 20, 1991 Opinion denying summary judgment. *See* Opinion, Sept. 20, 1991, 774 F.Supp. at 1443–1446 (Evidence of Bribes). As I stated at that time, the facts in the record permit a reasonable inference that the "payments to [Herminio T.] Disini [the alleged intermediary between Marcos and the defendants] were transmitted to Marcos or disposed of on his instructions in exchange for actions on behalf of Westinghouse and Burns and Roe." Opinion at 1445. As I summarized in the September 20 Opinion:

First, there is evidence that by decree President Marcos had placed NPC directly under the control of his office.

Second, there is evidence that both Westinghouse and Burns & Roe believed that in order to obtain the PNPP contracts they sought, they would need the assistance of a powerful person having influence with President Marcos. Disini was the person they selected to fill that role and there is evidence that both Westinghouse and Burns & Roe expected and knew that payments they made to Disini would be passed on in whole or in part to the President or would otherwise be at his disposal.

Third, there is evidence that Disini communicated with President Marcos and obtained from him authority to handle the PNPP contracts.

Fourth, it is undisputed that both Westinghouse and Burns & Roe entered into commission agreements with companies controlled by Disini pursuant to which millions of dollars were paid to those companies. There is evidence that the amounts of the payments were far in excess of any amounts which similarly situated companies would normally pay in such circumstances and that the payments were not made in the normal

2. The defendants' motion for reargument of my ruling on summary judgment is returnable October 28, 1991, as is their renewed motion to stay Counts 3 and 8.

3. Before the hearing on the motion, however, the defendants made a preliminary inquiry as to whether I would entertain a motion to close the courtroom. Defendants did not file this motion after I instructed them to consult very carefully the Third Circuit decisions on this issue, many of which I cite in this Opinion.

course but were transmitted to Swiss and other foreign bank accounts and were disguised both by Herdis [Management and Investment Corporation] and Technosphere [Consultants Group, Inc.] and by Westinghouse and Burns & Roe.

Fifth, there is evidence that President Marcos personally intervened in the PNPP project to ensure that Burns & Roe obtained the Phase I contract, to ensure that Westinghouse obtained the turnkey contract and that the terms were satisfactory to Westinghouse, to ensure that Burns & Roe obtained the architectural and engineering contract from Westinghouse, and to further Westinghouse's position from time to time during the course of the work on the project.

Sixth, there is evidence that both Westinghouse and Burns & Roe took steps to cover up the payments, suggesting guilty minds. Westinghouse sought to conceal the commission payments from NPC; Burns & Roe sought to withhold evidence of President Marcos' role in reversing the Phase I contract award. After 1977 reports in the press suggested that Westinghouse may have made improper payments to obtain the PNPP contract, Westinghouse burned the files in Manila relating to the procurement of the contract. Other records were destroyed and other efforts were made to avoid discovery of the Herdis agreement. President Marcos himself gave false and misleading accounts about the contracts, Disini and his companies. Opinion, at 1446.

I discussed testimony or affidavits, also included in the material submitted in connection with the summary judgment motion, of a number of witnesses, including Westinghouse employees, that Marcos did not receive any bribes. Opinion at 1444–45. Further, I found it unnecessary for purposes of the summary judgment motion to discuss the evidence of record and under seal regarding the award of subcontracts to firms in which Marcos had an interest, or the evidence of record and under seal regarding the alleged conspiracy among Westinghouse, Burns & Roe and Disini to bribe Marcos. Opinion at 1446.

The magistrate entered the Second Amended Protective Order that gives rise to the current motion to intervene on March 6, 1990, as part of the extensive discovery proceedings on the claims that continued to be the subject of litigation in this Court after May 18, 1989 ruling.[4] *See generally* Fed.R.Civ.P. 26(c); Second Amended Protective Order, Intervenors' Exhibit A. That "umbrella" order of March 6 provides:

> Any pleadings or other papers served or filed in this action or in the ICC Arbitration which quote, paraphrase or discuss the substance of any confidential discovery material shall be served and filed in sealed envelopes bearing the caption of this action or the ICC Arbitration.... If filed with the Court, said envelope shall be maintained by the Clerk of the Court as sealed and shall not be opened without further order of the Court. Second Amended Protective Order at ¶ 10.

Discovery constitutes "confidential discovery material" when the producing party designates such material as confidential in writing to counsel for the requesting party, upon a good faith belief that the material is entitled to protection under the Federal Rules of Civil Procedure. *Id.* at ¶ 3.[5] The Order may also be modified, superseded or terminated by written consent of the parties or by order of the Court. *Id.* at ¶ 15. It has no applicability to the use of discovery material designated as confidential at trial. *Id.* at ¶ 2.

Two categories of documents have been filed pursuant to this protective order and

---

**4.** The magistrate had previously entered an initial protective order on October 26, 1989 and a First Amended Protective Order on November 29, 1989.

**5.** Rule 26(c) provides for protective orders "[u]pon motion by a party, or by the person from whom discovery is sought, and for good cause shown...." Upon enactment of the Second Amended Protective Order the Republic, however, waived its right to challenge the confidentiality designations of materials produced before February 18, 1990. Second Amended Protective Order at ¶ 7.

are at issue on this motion to intervene.[6] First, the Clerk has filed all of the memoranda, exhibits, affidavits and deposition testimony submitted in connection with the summary judgment motion. Second, the Clerk has sealed the affidavits and documents submitted in support of Westinghouse's application to maintain the confidentiality of certain discovery material, which may or may not be part of the material filed in connection with the summary judgment motion.

The Intervenors and Westinghouse dispute whether, since the entry of the initial protective order in October 1989, Westinghouse showed good cause before the magistrate in the course of its applications to maintain confidentiality of certain documents. Westinghouse argues that it has repeatedly shown good cause for the entry of the various protective orders and the terms thereof in three hearings before the magistrate on the Republic's challenges to the confidentiality determinations.[7] Westinghouse Brief at 5–8 (History of the Protective Order). The Intervenors state that the initial protective order contains no general or specific finding of good cause and that the Second Amended Protective Order specifically provides for wholesale sealing of the record inconsistent with the requirement that good cause be shown. Further, they argue that the magistrate made no finding of good cause in the September 1989 hearing and cannot address Westinghouse's arguments concerning document-by-document good cause findings at the later hearings because the transcripts themselves are under seal. Intervenors' Reply Brief at 15–16.

Intervenors Public Citizen and Essential Information both publish magazines that report on corporate corruption, the safety and reliability of nuclear power plants and the regime of former President Marcos. Declarations of Ana Radelat and John Richard. Intervenor Dr. Jorge Emmanuel is a chemical engineer who has studied, lectured and written extensively on the dangers associated with the PNPP. Declaration of Dr. Jorge Emmanuel. They seek public access to "the papers filed with the Court under seal pursuant to the protective order," Motion to Intervene, August 26, 1991, at 1, in order to pursue their interests in examining and disseminating the information presented to the court and in researching and commenting on the PNPP.

Specifically, the Intervenors ask: (i) that Paragraph 10 of the Second Amended Protective Order be vacated to the extent it requires that all pleadings or other papers served or filed in this action that paraphrase or discuss the substance of any confidential discovery material be filed by the Clerk under seal; (ii) that any party seeking to have pleadings or other papers filed in this action placed under seal make an appropriate motion for this relief, and that any party planning to file pleadings or other papers that refer to information in material designated "confidential" under the Second Amended Protective Order by another party shall provide the party that designated the material reasonable advance notice so that the party may have the opportunity to file a motion to have the information placed under seal; and, (iii) that the Clerk unseal and place in the public record all pleadings and other material currently under seal. Intervenors' Proposed Order at 1–2. The Intervenors do not seek modification of the protective order as applied to material not filed with the Court. Brief in Support of Motion, at 11 n. 2. They argue that a presumptive right of access under common law and under the First Amendment applies to the sealed material and that the defendants have not satisfied the burden necessary to overcome the public's right to examine the material.

Westinghouse does not challenge the Intervenors standing to make their motion, although it notes that such standing derives only from their status as members of

---

6. Two hearing transcripts and a portion of a third relating to a grand jury proceeding have also been filed under seal pursuant to Federal Rule of Criminal Procedure 6(e). The Intervenors do not seek access to this material, Intervenors' Reply Brief at 5 n. 1, and my Order does not require its disclosure to the public.

7. Those hearings occurred on September 25 and December 11, 1989, and February 6, 1990.

the public. Westinghouse Brief at 13 n. 4. *See generally* Fed.R.Civ.P. 24; *Bank of America Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 341–42 n. 2 (3d Cir.1986); *United States v. Criden*, 675 F.2d 550, 552 n. 2 (3d Cir.1982) (*Criden II*). Be that as it may, Westinghouse argues that: (i) the motion is untimely; (ii) no right of access is applicable under common law or the First Amendment; (iii) any right of access is overcome under the circumstances; and (iv) the protective order should not be amended prospectively.

## DISCUSSION

### 1. Timing of the Motion.

■ Westinghouse challenges the motion on the grounds that it was not filed in a timely manner as required by Federal Rule of Civil Procedure 24. Protective orders have been in place since October 1989 while the motion to intervene was filed on August 29, 1991, only, according to Westinghouse, a short time before trial.[8] This allegedly makes the motion untimely because Intervenors' interest in disclosure has not changed during this period and because discovery has continued throughout the lawsuit in reliance on the protective order. The Court should consider that unsealing the record at this late date, according to Westinghouse, would prejudice the defendant more than if the motion had been filed earlier.[9]

The law does not support Westinghouse's timeliness argument. Challenges to protective orders are often not made until well after the underlying dispute between the parties has been resolved and dismissed. *See Bank of America*, 800 F.2d at 345 (challenge brought after settlement and motions to enforce settlement had been filed under seal); *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 782, 785 (1st Cir.1988), *cert. denied* 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989) (stating that courts have the power to enforce orders at any point while the order is in effect and noting that numerous courts have allowed intervention to challenge protective orders months or years after the end of the principal litigation). Motions to intervene have been held to be untimely and consequently denied at the discretion of district courts, but under much different circumstances. *See NAACP v. New York*, 413 U.S. 345, 369, 93 S.Ct. 2591, 2604, 37 L.Ed.2d 648 (1972) (where the Supreme Court upheld the denial of a motion where the intervenors had been aware for months of actions in the underlying suit which would almost certainly dispose of the action, and where granting the motion would severely disrupt primary elections in New York). Moreover, the current motion applies to all sealed material—both new and old—filed after October 1989. Insofar as the recent sealed material is concerned Westinghouse cannot properly assert that the motion is late.

Regarding Westinghouse's claim to have relied on the protective order to its detriment, the protective order states clearly that confidentiality determinations are subject to challenge and that the Order is subject to change or termination upon proper motion. Second Amended Protective Order at ¶ 7, 15. Westinghouse could not, therefore, have relied on the order to insulate discovery from subsequent disclosure until the time of trial. Any showing of detrimental reliance, moreover, would not

---

8. Westinghouse states at numerous times that the underlying lawsuit is likely to go to trial in the near future. Its invocation of the prospect of a trial on the merits is intended to support both its procedural and substantive objections to the motion to intervene. It is true that a tentative trial date on Counts 3 and 8 has been set for February 6, 1992. This is hardly to say, however, that the issues addressed on summary judgment will be presented to a jury soon or even at all. The trial date may change due to any number of factors or the parties may settle and the outstanding claims will never be tried.

9. As a substantive ground for dismissal Westinghouse argues that neither the common law nor the First Amendment requires disclosure of the sealed material because no presumptive right of access attaches until trial. *See infra* Section 2. As the Intervenors point out, the contradiction inherent in these competing objections of Westinghouse—where on substantive grounds the motion is made too early and on procedural grounds the motion is made too late—underscore the lack of merit of the objection based on timing.

constitute grounds for denying the motion to intervene, whether pursuant to procedural or substantive objections. The Third Circuit has already rejected the argument that parties can reasonably rely on a protective order to impose a higher standard on the public to obtain access when discovery materials are made part of a judicial record, particularly when the protective order originates, as is the case here, as a stipulation between the parties. *See Littlejohn v. BIC Corporation*, 851 F.2d 673, 680 & n. 15 (3d Cir.1988); *accord In re Continental Illinois Sec. Litig.*, 732 F.2d 1302, 1309–12 (7th Cir.1984).

As discussed immediately below, the presumptive right of access under the common law and the First Amendment is the proper standard in this case. Because that right compels access to the material filed in connection with the summary judgment motion, I cannot deny access based on any of the defendant's arguments concerning timeliness.

### 2. The Material Currently Under Seal.

It is clear from the discussion that follows that a presumptive public right of access applies to all material filed in connection with the summary judgment motion in the underlying action between the Republic, the NPC and the defendants, that any showing of good cause in the course of the confidentiality determinations is irrelevant to public disclosure of this judicial record and that Westinghouse has not met its burden to overcome the presumption. Further, the right is not conditioned, as Westinghouse would have it, by any concept of admissibility or finality.

The considerations regarding any sealed material not filed in connection with the summary judgment motion are different, however, and are addressed in Section C below.

A. The Presumptive Right of Access to the Record of Summary Judgment under Common Law and the First Amendment.

■ Public access to court records is protected by both the common law and the First Amendment. "The existence of a common law right of access to judicial proceedings and to inspect judicial records is beyond dispute." *Publicker Industries, Inc., v. Cohen*, 733 F.2d 1059, 1066 (3d Cir.1984) (citing *United States v. Criden*, 648 F.2d 814, 819 (3d Cir.1981) (*Criden I*)). *See also Nixon v. Warner Communications*, 435 U.S. 589, 597, 98 S.Ct. 1306, 1311–12, 55 L.Ed.2d 570 (1978) (citing authority). The First Amendment also " 'embraces a right of access.' " *Publicker Industries*, 733 F.2d at 1070 (quoting *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 604–05, 102 S.Ct. 2613, 2618–19, 73 L.Ed.2d 248 (1982)); *United States v. Smith*, 776 F.2d 1104, 1112 (3d Cir.1985).

■ This right, traditionally asserted in criminal proceedings, applies in the civil context. *See Gannett Co. Inc. v. DePasquale*, 443 U.S. 368, 386 n. 15, 99 S.Ct. 2898, 2908–09 n. 15, 61 L.Ed.2d 608 (1979); *Publicker Industries*, 733 F.2d at 1066, 1068–71 (summarizing authority and noting that the 1677 New Jersey Constitution provided that anyone could attend civil or criminal trials). The right of access to judicial records, like the openness of court proceedings, serves to enhance the basic fairness of the proceedings and to safeguard the integrity of the fact-finding process, *Press–Enterprise Co. v. Superior Court*, 464 U.S. 501, 508, 104 S.Ct. 819, 823, 78 L.Ed.2d 629 (1984) (*Press Enterprise I*); *Globe Newspaper*, 457 U.S. at 606, 102 S.Ct. at 2619–20, and is "inherent in the nature of our democratic form of government." *Publicker Industries*, 733 F.2d at 1068 (citing *United States v. Mitchell*, 551 F.2d 1252, 1258 (D.C.Cir.1976) *rev'd on other grounds sub nom. Nixon v. Warner Communications*, 435 U.S. at 598, 98 S.Ct. at 1312). The right of access to civil trials " 'fosters an appearance of fairness,' ... heightens 'public respect for the judicial process' [and] 'permits the public to participate in and serve as a check upon the judicial process—an essential component of our structure of self government.' " *Publicker Industries*, 733 F.2d at 1068 (citing *Globe Newspaper*, 457 U.S. at 606, 102 S.Ct. at 2620). *See also Brown & Wil-*

*liamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1178–79 (6th Cir.1983), *cert. denied* 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984) (summarizing interests served by open proceedings). This right encompasses a "presumption in favor of access" to the protected material. *Bank of America*, 800 F.2d at 343; *Nixon*, 435 U.S. at 597, 602, 98 S.Ct. at 1311, 1314.

■ No presumptive right of access applies, however, to civil discovery materials. *Cippilone v. Liggett Group, Inc.*, 785 F.2d 1108 (3d Cir.1986) (interpreting *Seattle Times v. Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)). District courts analyzing protective orders entered into during civil discovery are prohibited in the Third Circuit from engaging in First Amendment analysis, but instead examine whether protective orders meet the good cause requirements of Federal Rule of Civil Procedure 26(c). *Cippilone*, 785 F.2d at 1119–20. District courts apply the "clearly erroneous" standard to the entry of pretrial discovery orders by magistrates. *Id.* at 1120.

The parties' disagreement is not over basic principles of law as outlined above but over the nature of the material placed under seal. Westinghouse suggests that the summary judgment hearing is a pretrial proceeding that does not constitute a judicial adjudication qualifying for the presumption of access. Rather, the record of that hearing is pre-trial material, access to which is governed by *Cippilone*'s good cause requirements. Any right of access to pre-trial proceedings and the record thereof, according to Westinghouse, is limited to the oral hearing, unless a dispositive motion is granted. Only in that instance does a pre-trial proceeding constitute a substitute for trial, the record of which becomes accessible to the public. In any event, Westinghouse would limit disclosure of sealed pre-trial material considered in a pre-trial dispositive action to evidence that would be admissible at trial.

The Intervenors, however, argue strenuously that all of the record, once filed with the court for adjudication on the summary judgment motion, crosses a threshold requiring its public availability unless it is demonstrated that secrecy is justified.

■ It is clear from both the language and rationale of the Third Circuit rulings that the right of access, whether under the common law or the First Amendment, applies to the judicial record of actions on a motion. In *Publicker Industries* the Third Circuit held that the common law and First Amendment presumption of public access applied to the sealed transcript of a hearing for preliminary relief in a civil case. 733 F.2d at 1061. In *Bank of America*, the Third Circuit unsealed settlement documents filed in a civil proceeding, finding that, "it flows from our decisions ... that the common law presumption of access applies to motions filed in court proceedings." 800 F.2d at 343. The court affirmed the principle that discovery ordinarily conducted in private "stands on a different footing than does a motion filed by a party seeking action by the court," which "becomes a judicial record, and subject to the access accorded to such records." *Id.* The Third Circuit elaborated:

> [U]nlike the civil discovery materials at issue in *Seattle Times* [depositions and interrogatories], a motion or a settlement agreement filed with the court is a public component of a civil trial. As in the cases involving trial rulings and evidence admitted, the courts' approval of a settlement or action on a motion are matters which the public has a right to know about and evaluate. *Id.* at 343–45.

The Third Circuit added that decisions such as *Cippilone* and *New York v. United States Metals Refining Co.*, 771 F.2d 796 (3d Cir.1985) are inapposite where materials filed with the court are at issue. *Bank of America*, 800 F.2d at 344. Thus, the explicit language of the Third Circuit that "the common law presumption applies to motions" and that discovery "stands on a different footing than does a motion ... which becomes a judicial record" is inconsistent with the defendants' theory that the presumption of access does not apply to the material upon which I based my decision on summary judgment. *Id.* at 344.

■ Westinghouse attempts to circumvent the explicit language of the leading Third Circuit cases by proposing that the Third Circuit's reference in *Bank of America* to "cases involving trial *rulings* or evidence *admitted*" would, together with judicial action on dispositive motions, somehow encompass the entire range of judicial adjudications to which the right of access applies. Westinghouse Brief at 18, citing *Bank of America*, 800 F.2d at 343 (emphasis supplied by Westinghouse). This restrictive reading, however, is inconsistent not only with the clear language cited above extending the right of access to rulings on motions, but with the latter part of the same sentence, which states that "action[s] on motion[s]" are matters about which the public has a right to know and evaluate. *Id.* In addition, the Third Circuit has ruled that "[a]ccess means more than the ability to attend open court proceedings; it also encompasses the right of the public to inspect and copy judicial records." *Littlejohn*, 851 F.2d at 678.

This being the case, it makes no sense, as Westinghouse would have it, that access to sealed pre-trial material be limited by the concept of admissibility. This concept intends to ensure the veracity of material presented at trial so courts may arrive at correct and truthful conclusions. Should Counts 3 and 8 go to trial the Rules of Evidence will most certainly be in full force. However, the right of access intends to protect the public's right to evaluate the integrity of the judicial process. It is true that the decision as to whether or not to grant a summary judgment motion is ultimately based only on evidence that would be admissible at trial. As a prerequisite to the grant or denial, however, judges must examine the entire record filed in connection with the motion, as I did prior to September 20 regarding the allegations of bribery, in order to make preliminary determinations of what would be and what would not be admissible. It is precisely because these determinations constitute a basis for decisions on summary judgment motions, including my decision of September 20, that evaluation of the record informing the determinations is essential if

the right of access is to serve as a check on the judiciary. *Publicker Industries*, 733 F.2d at 1068; *Globe Newspaper*, 457 U.S. at 606, 102 S.Ct. at 2619.

Moreover, the decisions of the Third Circuit regarding pre-trial material do not so limit the right. *See United States v. Smith*, 787 F.2d 111, 114-15 (3d Cir.1986) (public right of access applies to sidebar conference in which objections were sustained); *Zenith Radio Corp. v. Matsushita Elec. Indus.*, 529 F.Supp. 866, 899 (E.D.Pa. 1981) ("In sum, we think that all materials that are the subject of an evidentiary ruling by the court, whether or not found admissible, are part of the record for purposes of the public's right to inspect and copy.") (footnote omitted).

That the presumption applies to a motion for summary judgment becomes even more certain upon consideration of cases from other jurisdictions. These cases also do not in any way limit access to material that would be admissible at trial. The Second Circuit, for example, has held that "documents used by parties moving for, or opposing summary judgment should not remain under seal absent the most compelling reasons," and that the "adjudication stage" of a lawsuit "should, absent exceptional circumstances, be subject to public scrutiny." *Joy v. North*, 692 F.2d 880, 893 (2d Cir.1982), *cert. denied* 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983). The Fourth Circuit has cited favorably to *Bank of America* and ruled that the First Amendment right of access applies to documents filed in conjunction with a summary judgment motion because this material, "filed by a party seeking action by the court ... lose[s its] status as being 'raw fruits of discovery'" and because "summary judgment adjudicates substantive rights." *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 252 (4th Cir.1988) (citing authority). *See also Brown & Williamson*, 710 F.2d at 1180-81; *In re Continental Illinois Sec. Litig.*, 732 F.2d at 1309 (extending the right of access to motions to terminate derivative claims because they are designed to result in the dismissal of claims).

Nor do the other decisions upon which Westinghouse relies to support its description of the sealed record as pre-trial material subject only to *Cippilone* dictate a different result. Westinghouse's citation to *Seattle Times*—in both the common law and First Amendment contexts—is completely unhelpful, since that case was limited to depositions and interrogatories not even filed with the court that can hardly be characterized as judicial records. *Seattle Times,* 467 U.S. at 33, 104 S.Ct. at 2207. *Nixon* and *Gannett* are similarly inapposite. *Nixon* did leave right of access decisions to the "sound discretion of the trial court" but did not purport to delineate the contours of the common law right. 435 U.S. at 599, 98 S.Ct. at 1312. In any event, the Supreme Court's denial of access to the tapes was based on "the fair administration of criminal justice" in the appeals of the four defendants in the corresponding criminal action, and on the "unique element" of the passage of the Presidential Recordings Act, which set forth an administrative procedure for release of Presidential materials. *Id.* at 603, 98 S.Ct. at 1314–15. Neither concern has any bearing on the release of the sealed material regarding the alleged bribery of Marcos by the defendants. Indeed, the Supreme Court characterized *Nixon* as a "concededly singular case." *Id.* at 608, 98 S.Ct. at 1317.

In *Gannett,* the Court upheld the exclusion of the press from a suppression hearing in a criminal case, noting that at the time of the adoption of the Constitution, *"pre-trial* proceedings" were not entitled to the same public access as "public *trials."* *Gannett,* 443 U.S. at 387, 99 S.Ct. at 2909 (emphasis supplied by Westinghouse). Access was denied, however, out of concerns over the availability of a fair trial for a criminal defendant, which are hardly applicable at present. *Id.* at 388, 99 S.Ct. at 2910.

Westinghouse also relies on *In re Reporters Comm. Freedom of the Press,* 773 F.2d 1325 (D.C.Cir.1985) for the broad proposition that public access does not pertain to private civil actions prior to judgment. To the extent that the opinion holds that

there was no constitutional right of access to certain discovery materials filed in connection with cross motions for summary judgment that were denied, its analysis of the presumption of access is inconsistent with the approach of the Third Circuit and the other decisions cited herein. Additionally, the D.C. Circuit may have considered a discussion of the common law right of access unhelpful where the parties refused to raise it, *id.* at 1340, but the common law right is clearly an issue at present. Also, Westinghouse's reliance on *Simon v. G.D. Searle,* 119 F.R.D. 683 (D.Minn.1987) is inapposite because that ruling did not concern documents relied on by a court in the context of a determination of the "litigants' substantive rights." *Id.* at 684. The court also indicated its inclination to unseal such material after the dispositive motion was decided. *Id.* at 684–85. I clearly relied on the record of summary judgment and have already decided the motion regarding Counts 3 and 8 of the underlying action.

Westinghouse also urges a reading of the authority that would confine the common law and First Amendment right of access and the consequent right to monitor the judicial process to final adjudications. Westinghouse Brief at 18–19, 21–27. Westinghouse concedes that if the motion for summary judgment was *granted,* there would be a right of public access, but because it was denied, there is no right to review the record that informed the Court's decision. *Id.* at 25–26 (emphasis added).

This restrictive interpretation may no more be reconciled with the language and rationale of the cases than may Westinghouse's proposal that the right of access does not apply to the material under seal in the first place. The very authority that Westinghouse cites to support the dispositive/non-dispositive distinction contradicts the restrictive reading on its face. *See Zenith,* 529 F.Supp. at 898 ("[i]f the purpose of the common law right of access is to check judicial abuses ... then the right should only extend to materials upon which a judicial decision is based") (citing *Wilk v. American Medical Ass'n,* 635 F.2d 1295, 1299 (7th Cir.1981)). This case does not turn on questions of finality but on the fact

that the record was submitted for judicial action—dispositive or otherwise. Similarly, in *Publicker Industries*, the Third Circuit held that the presumption of public access applied to the transcript of a hearing on an unsuccessful preliminary injunction motion because access to the transcript promotes better understanding of the courts. 733 F.2d at·1063, 1070. Also, the Third Circuit in *Bank of America* extended the right of access to "motions filed in court proceedings" without reference to outcome because the parties had "undertaken to utilize the judicial process to interpret the settlement." 800 F.2d at 343, 345.

Nor do the cases on public right of access from other jurisdictions in any way condition the right on outcome. *See Joy*, 692 F.2d at 893 (*"documents used by parties moving for, or opposing, summary judgment"* should not remain under seal, without reference to finality) (emphasis added); *Rushford*, 846 F.2d at 252 (applying to *"documents made part of a dispositive motion, such as a summary judgment motion"*) (emphasis added). *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 13 (1st Cir.1986) (recognizing that documents submitted pursuant to motions for summary judgment are subject to a public right of access, without reference to finality). *In re Continental Illinois Sec. Litig.*, 732 F.2d at 1302, confronted the issue of whether access turns on finality and constitutes strong grounds for rejection of Westinghouse's proposed dispositive/non-dispositive distinction. Continental Illinois argued that the presumption of access did not apply to a confidential report offered to support a motion to terminate a shareholder derivative suit because it withdrew its motion after the district court gave preliminary comments on the merits of the motion. *Id.* at 1306, 1310. The Seventh Circuit ruled that the "withdrawal of the motion is immaterial to whether the presumption of access applies to the Report" since the Report was the basis for factual and legal findings announced by the Court. *Id.* at 1309–10. Moreover, the right of access did not turn on the outcome of the motion because the motion was "designed to result in the dismissal of claims" and because

"the presumption of access normally involves a right of *contemporaneous* access; disclosure of the contents of the Report would have been proper at the time that motion was still pending." *Id.* at 1309–10 (emphasis in original).

The Seventh Circuit's language regarding contemporaneous access similarly disposes of Westinghouse's illogical assertion that "maintaining the confidentiality of documents until trial does not infringe on the public's ability to monitor the judicial process" and its implication, previously mentioned in the context of Westinghouse's objection to the timing of the motion to intervene, that a trial on the merits is on its way soon. Westinghouse Brief at 22. Even if a trial was necessarily going to occur shortly any future trial on the merits in no way makes the right of the public to examine the material of record on the summary judgment motion any less important or immediate.

Thus, is it clear that the public right of access applies to the judicial record of the summary judgment motion without any limits imposed by admissibility or finality.

**B.   The Burden To Overcome the Presumption Regarding the Record of the Summary Judgment Motion.**

Since the applicable standard is imposed by the presumptive right of access rather than good cause, I must determine whether the materials already filed under seal can satisfy the burden necessary to overcome the presumption. The Third Circuit has suggested that the requirements of the common law and the First Amendment may differ. *Bank of America*, 800 F.2d at 344. In *Publicker Industries*, for example, a case interpreting the common law and First Amendment rights, the Third Circuit stated that "[i]t is more difficult to decide whether the First Amendment [as opposed to the common law] affords protection against the exclusion of the public from civil trials," and required the party opposing disclosure to show " 'an overriding interest based on findings that closure is narrowly tailored to serve that interest.' " *Id.* at 1067, 1073 (citing *Press-Enterprise Co.*, 464 U.S. at

510, 104 S.Ct. at 824). *See also Bank of America,* 800 F.2d at 344. In *Criden I,* 648 F.2d at 818, the Third Circuit held that courts must balance the common law right against factors militating against access, and indicated elsewhere that the "burden is on the party who seeks to overcome the presumption of access to show that the interest in secrecy outweighs the presumption." *See also Bank of America,* 800 F.2d at 344. Under the First Amendment, the burden of access may be overcome upon a showing that protection is " 'necessitated by a compelling government interest, and is narrowly tailored to serve that interest.' " *Smith,* 776 F.2d at 1112 (citing *Press Enterprise,* 464 U.S. at 510, 104 S.Ct. at 824, and *Globe Newspaper,* 457 U.S. at 607, 102 S.Ct. at 2620). *See also Rushford,* 846 F.2d at 253 (where the Fourth Circuit concluded that the common law does not afford as much substantive protection to the interests of the press and public as the First Amendment).

■ I need not decide whether the standards actually differ. First, neither party has asserted that any variance implicates the outcome of this motion. Second and more importantly, it is clear that under either standard, the alleged injury to Westinghouse is not sufficient to justify the denial of access to judicial records.

That alleged injury encompasses "proprietary business information" including: confidential information relating to Westinghouse's analysis and evaluation of the PNPP contract and the positions taken and strategies employed by Westinghouse in negotiating that contract, that, if available to potential Westinghouse customers, would severely restrict Westinghouse's ability to negotiate future contracts, and if available to Westinghouse's competitors, would result in their gaining an invaluable competitive advantage; confidential information relating to Westinghouse's agreements with its Special Sales Representatives ("SSRs"), that, if disclosed, would damage Westinghouse's ability to negotiate such contracts with future SSRs, would encourage present SSRs to take advantage of the terms they consider to be more advantageous than those in their own agreements, and would provide Westinghouse's competitors with a substantial advantage in similar negotiations; and confidential information relating to Westinghouse's candid internal evaluations and assessments of customers, competitors, subcontractors, government officials, and other entities, disclosure of which would give an advantage to Westinghouse's competitors and would damage Westinghouse's business relationships with the subjects of those evaluations and assessments. Westinghouse Brief at 28–29. Westinghouse claims to have demonstrated this harm by affidavit in the course of its confidentiality applications before the magistrate. *Id.* at 29.

Under the terms of the Second Amended Protective Order the parties need only designate material as confidential upon a good faith belief of propriety under the Federal Rules of Civil Procedure, *see* Fed.R.Civ.P. 26(c) (authorizing protection from "annoyance, embarrassment, oppression, or undue burden or expense"), in order to have the clerk file it under seal. Second Amended Protective Order at ¶ 10. It is possible that the confidentiality of much of the material filed in connection with the summary judgment was not challenged and consequently was not the subject of any determination by the magistrate.

This issue, however, is unimportant concerning the material filed in connection with the summary judgment motion, since it is a judicial record. I examined this record and observed nothing that would overcome the applicable presumption of access.

The potential effects of the disclosure of "business information that might harm the litigant's competitive standing" may in some cases meet the burden of the party seeking to keep a judicial record under seal. *Nixon,* 435 U.S. at 598, 98 S.Ct. at 1312. This material, however, is traditionally defined with reference to trade secrets. *Id.* (citing *Flexmir, Inc., v. Herman,* 40 A.2d 799, 800 (N.J. Ch. 1945), where the court enjoined ex-employees who had signed and orally agreed to a confidentiali-

ty agreement from disclosing trade secrets and secret processes to competitors).

Westinghouse does not and cannot maintain that the sealed material contains trade secrets. And, the Third Circuit has rejected arguments that "confidential business information is [ ] entitled to the same level of protection from disclosure as trade secret information." *Littlejohn*, 851 F.2d at 685 (rejecting the appellant's argument that filed audits and intercompany memoranda whose disclosure and use by competitors would allegedly harm sales and cause the value of capital stock to diminish were sufficient to overcome the right of access). In *Publicker Industries*, a corporation sought to prevent disclosure of information proving the production of whiskey without a permit. *Publicker Industries*, 733 F.2d at 1065. The Third Circuit noted that the " 'sensitive' information at issue here is not the kind of confidential commercial information that courts have traditionally protected, *e.g.* trade secrets. It simply involves a matter of poor management." *Id.* at 1074 (citing *Zenith*, 529 F.Supp. at 890. n. 42, and *Joy*, 692 F.2d at 894) (where the Second Circuit held that the injury to reputation that might result from the release of an internal report giving a "candid assessment of the bank's internal operations" and showing managerial misconduct was "woefully short of the kind of showing which raise even an arguable issue as to whether it may be kept under seal," because such information is "hardly a trade secret"). Indeed, given that the subject matter of the summary judgment motion was bribery, it is likely that Westinghouse is concerned most about potential embarrassment and injury to reputation.

In view of the failure of Westinghouse to allege injury that could overcome the presumption of access I need not address whether the harm is supported by the required particularized showing. *See Publicker Industries*, 733 F.2d at 874; *Bank of America*, 800 F.2d at 346. Westinghouse also suggests, however, that pre-trial publicity based on inadmissible evidence might be prejudicial to Westinghouse and should be included in right of access analysis. Westinghouse Brief at 29–30 (citing the discussion of the potential implications of pre-trial publicity on the ability of a criminal defendant to obtain a fair trial in *Gannett*, 443 U.S. at 378–79, 99 S.Ct. at 2904–05). The standards for judicial orders to protect against prejudice from pre-trial publicity are exacting, however, and clearly not satisfied here, where Westinghouse has failed to show why it enjoys the same rights as a criminal defendant, has not shown any probability of prejudice and has presented no alternatives. *See Press–Enterprise v. Superior Court*, 478 U.S. 1, 14, 106 S.Ct. 2735, 2743, 92 L.Ed.2d 1 (1986) (*Press Enterprise II*) (pre-trial criminal proceeding to which First Amendment right of access attaches cannot be closed without specific findings that there is a substantial probability that the defendant's right to a fair trial will be prejudiced and that reasonable alternatives to closure cannot adequately protect defendant's rights).

For all these reasons Westinghouse has failed to overcome the burden imposed by the right of public access, and all the material submitted in connection with the summary judgment motion must be disclosed.

## C. Access to Additional Sealed Material.

It is unclear whether any additional documents under seal, which Westinghouse describes as material "submitted in support of the . . . application to maintain confidentiality," Westinghouse Brief at 11, are not part of the record of the summary judgment motion. It is also uncertain, however, whether the Intervenors are interested in obtaining any such material. Presumably the information most relevant to corporate corruption and the construction of the PNPP is contained in the record of summary judgment since these issues were in part the subject matter of that ruling. It is clear, however, that the Intervenors have not had adequate opportunity to be heard in the course of the underlying action.

I will, therefore, leave it to the Intervenors to move before the magistrate, who will apply the appropriate legal standards, regarding access to any such material. The dispute between the Intervenors and

Westinghouse over the demonstration of good cause for the protective order and in the course of document-by-document review may become important at that time.

*3. Operation of the Protective Order for the Remainder of the Underlying Action.*

Also in accordance with the Intervenors' interest in having adequate opportunity to be heard, the Second Amended Protective Order must be modified as to future filings with the Court, and is so modified.

## ORDER

This matter having been opened to the court on the motion of Medvin & Elberg, Public Citizen Litigation Group and Trial Lawyers for Public Justice, P.C. (collectively, the "Intervenors"), to intervene, to modify the protective order regarding future pleadings and to unseal the court records in the above-captioned action; and the Court, having considered the material submitted and having heard the arguments of counsel in support of and opposition to the motion to intervene, modify and unseal, in accordance with an Opinion of even date, and for good cause shown;

IT IS, this 18th day of October, 1991, ordered that:

1. The Clerk of the Court unseal all materials filed in support of or in opposition to the summary judgment motion, which was the subject of a hearing of May 28, 1991 and an opinion of September 20, 1991, except for materials relating to grand jury proceedings;

2. The parties submitting briefs and memoranda in support of or in opposition to the summary judgment motion provide such briefs and memoranda in accordance with the local rules of this Court;

3. Intervenors may move before the Magistrate Judge for the unsealing of any documents not unsealed under this order;

4. (a) as to future filings with the Court, nothing will be filed under seal unless application is made to the Magistrate Judge with notice to be provided to the Intervenors and he, applying applicable principles of law, issues a sealing order; and (b) plaintiffs and defendants will not file documents previously designated as confidential and not unsealed pursuant to this order without giving 20 days written notice to the opposing party, which then may apply, on notice to the Intervenors, for continuation of the confidentiality designation;

5. To the extent that any provisions of the Second Amended Protective Order are inconsistent with this Order they are hereby deemed to be modified; and,

6. The provisions of paragraph 1 and 2 of this Order shall take effect 7 days after the date of this Order.